```
                    UNITED STATES DISTRICT COURT
                   NORTHERN DISTRICT OF TEXAS
                        DALLAS DIVISION


UNITED STATES OF AMERICA,         ) SEALED TRANSCRIPT !!
                                  )
                    Plaintiff,    )
                                  )
     VS.                          ) No. 3:21-CR-440-M
                                  )
JOHN GRISHAM, ROB WILBURN and     )
RICHARD SPEIGHTS, JR.,            )
                                  )
                    Defendants.   )
_____    )


 HEARING IN RE:  EX PARTE PRODUCTION -- VIA ZOOM CONFERENCE CALL
          BEFORE THE HONORABLE BARBARA M.G. LYNN
               UNITED STATES DISTRICT JUDGE
                      MAY 12, 2023
                      DALLAS, TEXAS

FOR THE PLAINTIFF:

     SEAN P. TONOLLI
     STEVEN S. MICHAELS
     JOHN F. KOSMIDIS
     TIMOTHY J. COLEY
     GLENN LEON
     LISA MILLER
     SCOTT HOGAN
     UNITED STATES DEPARTMENT OF JUSTICE
     Criminal Division, Fraud Section
     1400 New York Avenue NW
     Washington, DC  20530
     (202) 514-2000


     LEIGHA SIMONTON
     TIFFANY EGGERS
     U.S. ATTORNEY'S OFFICE
     1100 Commerce Street, 3rd Floor
     Dallas, TX  75242
     (214)


FOR THE DEFENDANTS:
```

(NOT PRESENT -- EX PARTE HEARING)

    Proceedings reported by mechanical stenography; transcript
produced by computer-aided transcription.
_____

                    DEBORAH A. KRIEGSHAUSER, FAPR, RMR, CRR
                       Federal Official Court Reporter
                      1100 Commerce Street, 15th Floor
                            Dallas, TX  75242
                            (214) 753-2325

3

```
1              (PROCEEDINGS BEGAN AT 3:33 PM.)

2          THE COURT:  All right.  This is Judge Lynn.  I'd like

3   appearances, please, and I think there's some people on the

4   Prosecution Team, not the Filter Team, who are on the line and I

5   don't know why.  So if you are one of those when you announce

6   yourselves, explain.

7          Okay.  So will somebody start?

8          I don't know how to call on you because you're in

9   different orders for everyone.

10         MR. TONOLLI:  I'll start.  And good afternoon,

11  Judge Lynn.  I'm Sean Tonolli, and with me are Tim Coley and

12  Steven Michaels.  We are members of the Filter Team.

13         THE COURT:  Okay.  So you are coming in under the name

14  of a person who is on the Prosecution Team?  I assume you're just

15  using her link.

16         MR. TONOLLI:  That's correct.  We are here in Dallas

17  and we are in her office.

18         THE COURT:  Okay.  And she's not on the call, is not

19  listening, is not participating in any way; correct?

20         MR. TONOLLI:  That is correct, Your Honor.

21         THE COURT:  Okay.  Thank you.  Proceed.

22         MR. LEON:  Good afternoon, Your Honor.  My name is

23  Glenn Leon.  I'm the Chief of the Fraud Section.  So I'm

24  Mr. Tonolli's direct supervisor, and I'm here.  I'm not a member

25  of the Filter Team, but I -- I lead the section that handles the
```

 1  case that we're here for.

 2          THE COURT:  Okay.  And you're in Washington?

 3          MR. LEON:  I am.

 4          THE COURT:  Okay.  Next?

 5          MS. MILLER:  Good afternoon, Your Honor.  Lisa Miller,

 6  also on behalf of the United States.  I apologize for the

 7  background sirens from here in Washington.  I'm a Deputy

 8  Assistant Attorney General with responsibility for the Fraud

 9  Section and, as such, I'm the supervisor of Glenn Leon as well as

10  the Fraud Section here in my capacity as the supervisor.

11          THE COURT:  Thank you.  Next?

12          MS. SIMONTON:  I'm Leigha Simonton, Judge Lynn, and I'm

13  the U.S. Attorney for the Northern District of Texas.

14          THE COURT:  Okay.  Thank you.

15          MR. HOGAN:  Scott Hogan.  I'm the First Assistant for

16  the U.S. Attorney's Office for the Northern District of Texas.

17          THE COURT:  Thank you.  Ms. Eggers, I think you're up.

18          MS. EGGERS:  Good afternoon, Your Honor.

19  Tiffany Eggers, Criminal Chief of the Northern District of Texas,

20  U.S. Attorney's Office.

21          MR. KOSMIDIS:  And, Your Honor, John Kosmidis from the

22  Fraud Section Special Matters Unit, currently in Washington, DC.

23          THE COURT:  Okay.  Are you a member of the Filter Team?

24          MR. KOSMIDIS:  That's correct, Your Honor.

25          THE COURT:  All right.  I think the only others on the

5

1    line are my law clerk, Kate Marcom, and my court reporter,

2    Debbie Kriegshauser.

3        Anyone else on the line?  Do you all know of anyone

4    else on the line?

5        (Silence)

6        THE COURT:  Okay.  All right.  I'm listening.

7        MR. TONOLLI:  Your Honor, again, Sean Tonolli on behalf

8    of the Filter Team, but I'll address the new information that the

9    Court requested, and I'll say upfront that we appreciate the

10   Court taking the time and apologize interrupting on the Court's

11   schedule.

12       The bottom line upfront is that we learned late

13   yesterday that both Carlos Lopez, the Fraud Section trial

14   attorney who led the investigation and prosecution before the

15   Court, and Barrett Howell, the lead counsel to James Courville,

16   recently deleted text messages between themselves relevant to

17   issues before the Court.

18       Mr. Lopez's conduct, unfortunately, means that the

19   Filter Teams's representation to the Court and the Defense that

20   we have produced all of his relevant texts in our possession was

21   not accurate.  And for that and on behalf of the Government, I

22   and those of us on the Filter Team apologize.

23       Mr. Lopez's disclosure also prompted the Filter Team's

24   choice of words in our notice to the Court this morning; namely,

25   that we could not represent that what we produced *in camera*

1    represents all the additional discovery that was the subject of

2    the Court's order earlier this week.

3         Because Mr. Lopez was the lead trial attorney on the

4    investigation that led to the indictments, the Filter Team had to

5    rely on him heavily to identify and provide us with responsive

6    information.  And that material, as your chambers has likely told

7    you, filled several binders.  But based on what we learned late

8    yesterday, we could not rely on Mr. Lopez's representation to us

9    about the thoroughness or completeness of his review and

10   production to us of relevant information.

11        More fundamentally, in light of Mr. Lopez's conduct and

12   the surrounding facts and circumstances, which I will summarize

13   for the Court, the Department has now made the decision to move

14   to dismiss with prejudicial the Superseding Indictment as to all

15   three defendants.

16        We have not yet told counsel for the Defendants, but

17   with the Court's leave and guidance, we will reach out

18   immediately after the hearing is over.  And whether they consent

19   or not, we will file the motion this afternoon.

20        We learned of Mr. Lopez's conduct yesterday through a

21   proffer by his personal attorney at approximately 4:30 PM.

22        THE COURT:  Who is that?

23        MR. TONOLLI:  Nicholas Bunch.

24        Earlier that afternoon, Mr. Bunch had asked us for a

25   meeting without telling us what they wanted to discuss.  To

1    understand the context of that meeting and what Mr. Lopez's

2    attorney specifically told us, I need to first explain what we

3    had learned over the course of this week from the Katten Law

4    Firm.

5        As Your Honor knows, Mr. Howell and Ryan Meyer are both

6    Katten partners who represented James Courville, the cooperating

7    witness at the center of the allegations before the Court.

8    Because both attorneys are witnesses with respect to the

9    Defendants' allegations, other Katten lawyers have been

10   representing them and Mr. Courville with respect to these

11   proceedings and the Defendants' discovery requests.

12       In the evening of Monday, May 8th, so this Monday, the

13   Katten attorneys made an initial discovery production to the

14   parties, both the Defense and the Government.  It consisted of

15   Microsoft Excel spreadsheets with what were represented to be

16   Mr. Howell's text messages with Mr. Lopez, both Mr. Lopez's

17   Government phone and his personal phone.

18       We had collected from Mr. Lopez on the Filter Team and

19   produced to the Defense what Mr. Lopez had informed us were all

20   his text messages with Mr. Howell that he had, and those were all

21   on his work phone.  Mr. Lopez did not tell us and we did not know

22   that he had texted with Mr. Howell on his personal phone.

23       Now reviewing those texts on -- in the Katten

24   production on the personal phone, they appear to be largely

25   personal in nature, though there was at least one related to this

1    case.

2          The most recent text that we saw in that production on

3    Mr. Lopez's personal phone was from January 14th of this year, so

4    roughly four months ago and before this litigation began.  We

5    asked Mr. Lopez that same night of May 8th about the texts from

6    his personal phone.  He represented to us that it was his

7    practice regularly to delete text messages on his personal phone

8    to save space and that he must have done that with respect to

9    Mr. Howell's texts because he no longer had them.  We accepted

10   his representation and otherwise knew that the Defendants had the

11   texts from the Katten production and could use them at the

12   evidentiary hearing that ---

13          THE COURT:  Slow down -- Slow down a bit.

14          MR. TONOLLI:  Sure.

15          THE COURT:  I know I've given you a short period, but

16   my brain has to work.  So just slow down a beat and a half.

17          MR. TONOLLI:  I will.  Thank you, Your Honor.

18          THE COURT:  Okay.

19          MR. TONOLLI:  So we knew that the Defendants would have

20   access to these texts because Katten had produced them and could,

21   therefore, use them at the evidentiary hearing, and Mr. Lopez

22   would have to explain to them and Your Honor his practice or

23   supposed practice with respect to his personal phone.

24          Katten made a second discovery production to the

25   parties the afternoon of Wednesday, the 10th, so just two days

```
 1   ago.  This included two reports that appeared to have been
 2   prepared through a forensic tool to extract text messages from
 3   the cell phones of Mr. Howell and Mr. Meyer, the Katten partners.
 4   Each of the reports, which are essentially spreadsheets, stood
 5   out to us for different reasons.  I'll start with Mr. Howell's
 6   first.
 7          The report on his phone has two entries for most of the
 8   messages.  So for each message, two entries.  What immediately
 9   caught our attention was that for one entry for each of these
10   messages indicated that the message was deleted on the afternoon
11   of April 20th of 2023.  April 20th is the day that Defense
12   counsel, with the Court's leave, served Mr. Howell and Mr. Meyer
13   with their motion for the evidentiary hearing and discovery and,
14   thus, it was at that time that Mr. Howell learned that his texts
15   with Mr. Lopez would be the subject of potential discovery to the
16   Defendants.  It, therefore, appeared from the tool that the
17   forensic -- that the forensic tool was able to still recover
18   these text messages.
19          I see that the Judge's video dropped.
20          MS. MARCOM:  She's no longer on the call.  Let's just
21   go on a pause for a second.
22          (Pause)
23          MS. MARCOM:  Judge just let me know she dropped off and
24   is getting back in.  So if everybody could just hold on.
25          THE COURT:  Okay.  My apologies, everyone.  The Home2
```

1  Suites in Frederick, Maryland is not generally equipped for calls

2  of this nature.  So if it happens again, I will apologize and

3  come back around.

4        I'm not sure if you know when I dropped off, so you

5  might want to --

6        MR. TONOLLI:  Sure.

7        THE COURT:  -- back up.  You were talking about the

8  reports.

9        MR. TONOLLI:  Yes, Your Honor.  Thank you.

10        I was at the point of describing that the reports

11  appeared to reflect that Mr. Howell deleted his messages with

12  Mr. Lopez or at least most of them on the day he received notice

13  of the Defense motion requesting, at least in part, his texts

14  with Mr. Lopez.

15        We called counsel from Katten that same afternoon and

16  asked if we were reading the report correctly.  Counsel did not

17  confirm one way or the other whether the report did, in fact,

18  establish that he had deleted a message, and they did not come

19  back to us on the issue until yesterday at approximately 5:15 PM.

20        THE COURT:  And who are you talking to?  Who ---

21        MR. TONOLLI:  Chris Stetler.  He's a partner with

22  Katten who's been handling the representation.

23        THE COURT:  Okay.

24        MR. TONOLLI:  I don't know -- We and the Government

25  don't know what, if any, conversations Katten has had with the

1    Defense about these text messages, though we have seen e-mail

2    communications that the Defense received and was able to open the

3    productions.

4           THE COURT:  Okay.  Let me -- I am saying this out of an

5    abundance of caution, not because I believe it is in any sense

6    disqualifying, but I will just put on the record that

7    Mr. Solomon, the managing partner of Katten, lives where I do,

8    and I conducted his wedding within the last year.

9           Does anyone on the line think that is any kind of an

10   issue?

11          MR. TONOLLI:  No, Your Honor.  I -- I interacted

12   directly.  Mr. Solomon has not made an appearance one way or the

13   in the case, --

14          THE COURT:  All right.  Okay.

15          MR. TONOLLI:  -- and I don't believe it's an issue.

16          THE COURT:  Okay.

17          MR. TONOLLI:  I'll -- I'll tell Your Honor about the

18   call with Katten yesterday evening in a moment, but, first, let

19   me describe about what came to our attention about the report on

20   Mr. Meyer's phone.

21          Quite simply to rely on text messages in the report

22   between Mr. Meyer and Mr. Lopez on Mr. Lopez's work phone, none

23   that we can see with Mr. Lopez's personal phone, but there were

24   messages that we on the Filter Team had never seen before, and we

25   had requested from Mr. Lopez that he provide his text messages

1   with Mr. Meyer as responsive to the discovery requests, and we

2   produced the ones he gave us to the Defense.

3           THE COURT:  Were the -- Were those -- Were those same

4   -- Weren't those same messages supposed to be produced earlier by

5   Katten?

6           MR. TONOLLI:  Katten had -- Both.  We were both -- The

7   Government was requested to produce as was Katten.  So we had

8   produced what we had in our possession to the Defense, yes,

9   Your Honor.

10          THE COURT:  But those were not produced by Katten

11  earlier.

12          MR. TONOLLI:  They -- They did not produce anything

13  until this Wednesday, May 8th.

14          THE COURT:  Okay.

15          MR. TONOLLI:  That's right.

16          THE COURT:  Okay.  All right.

17          MR. TONOLLI:  Several of the messages that we saw on

18  the report of Mr. Meyer's phone related to this case, and they

19  also just generally speak to the relationship between Mr. Lopez

20  on the one hand and Mr. Howell and Mr. Meyer on the other.

21          We spoke with Mr. Lopez that same afternoon of May

22  10th, so two days ago.  We were in Washington.  He was in Dallas

23  at the time.  We conducted the discussion over video.  We

24  presented him with the report on Mr. Meyer's phone and asked why

25  it had more messages than he had provided us.  He represented to

1    us at that time that he recognized the messages, ones that we

2    pointed out to him, as ones he sent or received but could not

3    explain why they were not still on his work phone.  He claimed

4    his phone often malfunctioned and that that must explain the gap

5    in his records.

6         At that point, though the Filter Team could not say

7    that Mr. Lopez was being untruthful, we had sufficient concern

8    about the potential loss of responsive information that we

9    arranged for him to submit his work phone to be forensically

10   imaged by experts in the Criminal Division's Computer Crimes and

11   Intellectual Property Section, what we call "CCIPS."

12        Mr. Lopez shipped his phone that same night, so this

13   Wednesday night, and it arrived at CCIPS this morning and CCIPS

14   is currently, and we just checked with them before the hearing,

15   is extracting information from the phone.

16        But what Mr. Lopez knew when he shipped the phone to

17   CCIPS but what we did not know until we heard from his attorney,

18   Mr. Bunch, yesterday is that the forensic analysis will reveal

19   that he recently deleted certain of his text messages with

20   Mr. Howell and Mr. Meyer.  Mr. Lopez's attorney, Mr. Bunch, told

21   us during the meeting yesterday afternoon that his client deleted

22   the messages a couple of weeks ago, meaning after he was aware of

23   the Defendants' requests for his text messages, and he did so in

24   a moment of what Mr. Bunch described as a "moment of panic" and

25   late at night.

1       To give the Court some flavor of the deleted messages

2   that Mr. Lopez's attorney specifically mentioned, one set

3   involved Mr. Meyer inviting Mr. Lopez out to dinner and drinks

4   with he and Mr. Howell and offering to pay.  This was the night

5   of July 27th of 2021 on which day Mr. Lopez has presented a

6   reverse proffer to Mr. Courville, Mr. Grisham, Mr. Wilburn and

7   the respective attorneys.  It's a date that Mr. Poe mentions in

8   his declaration to the Court on a motion.

9       Another set of messages involved discussion among

10  Mr. Lopez, Mr. Howell and Mr. Meyer about a potential plea offer

11  for the Defendants, Mr. Grisham and Wilburn, prior to indictment

12  to which Mr. Howell responded to the effect and in part that,

13  quote, "We know what we have to do," closed quote.

14      Mr. Lopez's attorney acknowledged during yesterday's

15  meeting that Mr. Lopez had caused the Filter Team to make

16  inaccurate representations to the Defendants and the Court and

17  that we would need to disclose as such.  He said Mr. Lopez would

18  appear at the evidentiary hearing on Monday but did not indicate

19  one way or the other whether his client would answer questions at

20  the hearing.

21      Soon after receiving that proffer is when we received a

22  call from the Katten counsel at approximately 5:15 PM.  They

23  informed us that they had withdrawn from representing Mr. Howell

24  and advised him to retain his own counsel.  The Court may be

25  aware, or at least your chambers, that counsel for Mr. Howell

1    only recently within the past hour entered their appearance on

2    the case.

3              THE COURT:  No.  I'm not -- I'm not aware of that.

4              MR. TONOLLI:  Okay.

5              THE COURT:  I have been traveling to get where I am, so

6    I am not aware of that.

7              MR. TONOLLI:  Well, he had counsel ---

8              THE COURT:  Who is that?  Who is that?

9              Kate?  Kate, do you have that?

10             MR. KOSMIDIS:  Your Honor, it's Brian Kidd from

11   Morrison & Foerster.  He's based in Washington, DC.

12             THE COURT:  Okay.

13             MR. TONOLLI:  The Katten attorneys further told us that

14   they were not sure that Mr. Howell would answer questions at the

15   evidentiary hearing on Monday but that he would be there at least

16   with counsel.  We and the Government have not heard from his

17   counsel as of yet.

18             Though counsel did not, during last night's call,

19   confirm that Mr. Howell deleted text messages or say one way or

20   the other, but they made clear that their instruction to him that

21   they would no longer represent him was related at least in part

22   to the messages.  We view that as confirmation that our reading

23   of the report on his phone is correct that he did delete

24   messages.

25             We consulted with the CCIPS experts who are currently

1    examining Mr. Lopez's phone, and the expert told us based on his

2    review of the report about Mr. Howell's phone and with the caveat

3    that he has not -- was not involved in the analysis and does not

4    have access to Mr. Howell's phone, he said that he agrees with

5    our conclusion that it shows the text messages were deleted on

6    April 20th.

7         THE COURT:  Since you've paused for a minute, you do

8    not have Mr. Lopez's personal phone for examination.  Is that

9    correct?

10        MR. TONOLLI:  That is correct, Your Honor.

11        THE COURT:  Is that -- Has that been offered to you?

12        MR. TONOLLI:  It has not been offered, nor have we

13   asked, --

14        THE COURT:  Okay.

15        MR. TONOLLI:  -- given that we've all been in a fluid

16   situation.

17        THE COURT:  Okay.

18        MR. TONOLLI:  As of yet, we have not asked.

19        THE COURT:  Okay.

20        MR. TONOLLI:  With regard to Mr. Courville -- And I'm

21   almost done Your Honor and happy to take questions.

22        THE COURT:  I'm fine.  I gave you a little too tight a

23   deadline.  I'm okay.

24        MR. TONOLLI:  Okay.  Katten counsel also represented to

25   us last night that they had advised Mr. Courville to retain new

1    counsel from outside Katten.  We don't -- We do not know the

2    status of Mr. Courville's representation at the moment, but

3    Katten counsel made a point of saying that their instruction to

4    him should not be interpreted as a suggestion that he engaged in

5    any misconduct with respect to text messages or the discovery in

6    this case but, rather, was a consequence of the firm's decision

7    with respect to Mr. Howell who, again, was his -- his lead

8    attorney.

9            I'll say, though, further to Mr. Courville, on

10   Wednesday Katten told us that Mr. Courville was considering and

11   likely to refuse to answer questions at the evidentiary hearing

12   based on his rights under the Fifth Amendment.  They had

13   represented that there was a concern about his potential exposure

14   with respect to the kickback scheme charged in the indictment.

15           We have been working diligently since Wednesday to

16   obtain approval to grant statutory immunity to Mr. Courville and

17   to move to compel him to testify, if need be.  And this was in

18   line with the Filter Team's overall approach of making available

19   to the Defendants and the Court a fulsome record on which to

20   address the issues that had been raised.  However, and as I've

21   said, we no longer have confidence that we have produced or could

22   produce all responsive information in the Government's

23   possession, custody and control.

24           That's what prompted our notice this morning.  And as I

25   said at the start, the Department has made the decision to move

1    to dismiss with prejudice.

2         THE COURT:  Are these -- Are these messages between

3    Misters Howell, Meyer and Lopez copied or blind copied to

4    Mr. Courville?

5         MR. TONOLLI:  Based on what we've seen, I see no -- I

6    can't say that there's any indication of that, but we're not in a

7    position to make a representation.  But from the report, it

8    doesn't appear that they were.

9         THE COURT:  Okay.  Do Ms. Miller or Mr. Leon have any

10   comments?

11        Obviously, since I'm performing my nephew's wedding

12   tomorrow, I'm going to try to keep myself calmer than I would

13   otherwise be.  Suffice to say, what I am hearing is on the

14   1-to-10 scale of outrageousness probably an 11.

15        So Ms. Miller?

16        MS. MILLER:  Your Honor, I wish we were meeting on

17   other circumstances, believe me, but overall, Mr. Tonolli is

18   correct.  We see no other appropriate or just action to take at

19   this point other than to dismiss this case with prejudice.  It's

20   not something the Department takes lightly in this case or in any

21   case, given the interests of the public in these prosecutions and

22   otherwise, but it's -- it's the correct outcome in this case.

23   And that's why we are going to, with the Court's permission,

24   consult with the Defendants after today's hearing and move

25   expeditiously to dismiss with prejudice.

1          Separately as to Mr. Lopez, as Mr. Tonolli noted, we

2    still do not have a complete factual record of all the messages,

3    but we will continue to diligently look into that.  But we have

4    referred him for personnel action within the department, and

5    there are limits to what I can say about that, but I'm sure you

6    may appreciate what I mean there, and we're going to act

7    internally in accordance with our policies.

8          THE COURT:  Well, I understand that.  I'm also going to

9    take such action as I deem appropriate with respect to Mr. Lopez

10   when I know what all the facts are.

11         So in what way will the Court be advised of what the

12   facts are with respect to Mr. Lopez?

13         He is counsel of record before me; has appeared before

14   our court.  I will have on obligation, in my view, when I know

15   what the facts are, to advise the other members of my court what

16   I learn about that in terms of his prerogative to appear before

17   me.

18         As a member of the Bar myself, I may have ethical

19   obligations to report him to whatever officials are appropriate.

20   I doubt that he is a member of the State Bar of Texas, but I will

21   find out.

22         So in what way may I expect that I will learn what the

23   facts are with respect to this to satisfy obligations that I

24   believe I have?

25         Ms. Miller, I can't hear you for some reason.  You're

 1    not showing that I can't hear you but I can't.

 2            Is anybody hearing Ms. Miller at the moment?

 3            COURT REPORTER:  I am not, Judge.

 4            THE COURT:  Okay.  Now you're showing that we can't

 5    hear you but before, you were not and we still couldn't hear you,

 6    Ms. Miller.

 7            Okay.  Try dialing back in as you suggest, Ms. Miller.

 8    That will be fine.

 9            (Pause)

10            THE COURT:  Mr. Tonolli, I'm going to ask you a

11    question but it may be not for you but may be more appropriate

12    for Mr. Leon and Ms. Miller when she gets back on the line.

13            Let's assume that Mr. Lopez and Mr. Howell may have

14    made false statements in affidavits before the Court.  What would

15    the process be for pursuing that with respect to possible

16    criminal prosecution?

17            MR. TONOLLI:  Your Honor, as a factual matter, neither

18    Mr. Lopez, nor Mr. Howell have submitted affidavits or

19    declarations in connection with the case.

20            THE COURT:  Okay.

21            MR. TONOLLI:  They certainly have made representations

22    to the Filter Team; that is, Mr. Lopez has about his provision of

23    responsive information.  I know that however the Department

24    chooses to handle that, that's something that is an ongoing

25    conversation that Ms. Miller and maybe Mr. Leon could more

 1    appropriately address.

 2            MR. LEON:  Your Honor, I'm happy to try to answer a bit

 3    more, but you're asking the right questions.  We're asking them

 4    ourselves.  We're processing this in real time.  We just learned

 5    about this barely 24 hours ago, but what I think the Court is

 6    thinking about is the correct way.  Mr. Lopez has rights, but we

 7    will certainly honor them internally, but we need to, obviously,

 8    understand everything that happened and all appropriate sanctions

 9    should be considered.

10            THE COURT:  Okay.

11            MR. LEON:  It's -- We still don't have complete

12    information, but the Court is thinking the same way we're

13    thinking.

14            THE COURT:  All right.  I'm sorry.  I've got a little

15    bit of a delay here, Mr. Leon.  I didn't mean to step on you.

16            I'm simply trying to make the point that I appreciate

17    Mr. Tonolli and the other members of the Filter Team who I see

18    behind you there.

19            I very much appreciate the terribly awkward,

20    uncomfortable and wrong in terms of how it affects you that you

21    all have been placed in.  I'm very sympathetic to that, and I do

22    not attribute any of this to you.  I think that goes without

23    saying, but probably best for me to say it, so I am saying it.

24    I'm not confusing Mr. Lopez with you.

25            But I do not intend for your correct decision-making

1    with respect to dismissing the case to be the end of this as far

2    as I'm concerned.  So there will be some way that you all will

3    figure out to make sure that I am in the loop.

4          And I'm going to say something that has just been on my

5    mind for quite some time, so I'm just going to get it off my

6    mind, Mr. Leon.

7          I personally am not happy with this structure of

8    prosecutors that sit in the office of our United States Attorney.

9    Ms. Simonton, whose name appears on pleadings in my court, who

10   doesn't know what the heck is going on with these prosecutors.

11   That is just not good management in my view, and I've had that

12   concern, and now I have proof of that concern being warranted.

13         It is quite a different thing to supervise people from

14   1200 miles away than it is from down the hall.  I am not making

15   that comment to you, Mr. Leon, with any suggestion that you did

16   not do your best or that you are responsible for what I am

17   hearing today.  But going forward, in my view, I had this worry

18   before anything bad happened, and now I have justification for my

19   worries, so I'm expressing that to you.  So I hope that that will

20   get communicated to the Attorney General because I don't think

21   this system serves the interests of justice well.  It is a lot

22   easier for cozy and inappropriate relationships to manifest

23   themselves when the supervisors are far away and can't see it

24   happening.

25         So you don't have to respond to that.  I'm just getting

1    that off my chest.  I hope you all will consider that going

2    forward.

3         I would not want to be in the position that our U.S.

4    Attorney is in, having these people in her office, having a case

5    dismissed with prejudice, which is going to get a lot of

6    attention and everybody's going to wonder why, and Ms. Simonton

7    is an innocent pawn in this, and I don't like it for her and I

8    don't like it for me.

9         So we'll leave it that.  I don't expect you to respond

10   to that and there's no suggestion of anything inappropriate or

11   negligent on your part, Mr. Leon, at all.  But I think when you

12   are looking at somebody and the whites of their eyes, not through

13   Zoom, you get a lot of accountability that is lost when attempted

14   remotely.

15        Ms. Miller, I don't see you but your square is there.

16   So I don't know if you're back, want to be heard, or whether

17   you're still trying to get in.

18        Mr. Leon, I'm not preventing you from responding.  I'm

19   just telling you you don't have to.

20        MR. LEON:  That's fine.  Ms. Miller, you appear to be

21   on mute.  I don't know if you want to try to reach in by phone.

22   There we go.

23        MS. MILLER:  Can you all --

24        MR. LEON:  Yes, --

25        MS. MILLER:  -- hear me now?

1          MR. LEON:  -- we can.

2          THE COURT:  Yes.

3          MS. MILLER:  Your Honor, I greatly apologize for the

4     technical difficulties.  I'm actually at my computer here in

5     Washington where usually I have better success.  So I apologize

6     that my video and audio synching is not functioning.

7          THE COURT:  No problem.  No problem.

8          MS. MILLER:  But, again, I, you know, apologize on

9     behalf of the Department and, you know, our team here in this

10    case.  I missed part of what Mr. Leon said when I was trying to

11    dial back in, but I hope he indicated to you that we are

12    immediately taking steps to remediate and ensure as best that we

13    can that things like this never occur again.  It is, to say the

14    least, a very disappointing day for us and, you know, we expect

15    more from all of our attorneys.  We train our attorneys.  We do

16    have people on the ground in person with our attorneys.  We are

17    really extremely grateful to have colleagues, such as the U.S.

18    Attorney in the Northern District of Texas, supporting us but

19    you're correct.  This was a case that was simply a Fraud Section

20    case.  We are guests in the district, and we want to hold

21    ourselves and our attorneys to the highest of standards because

22    that's what the job demands.  And here, we fell short, and I

23    apologize to the Court.  But for my part, for Mr. Leon's part,

24    for all of our parts, we are going to take immediate steps and,

25    you know, with respect to the personnel action.  I had to hop off

 1    of the call because of IT issues but stand ready and remain ready

 2    to answer any additional questions the Court has.

 3            THE COURT:  Well, I -- I don't want to repeat

 4    everything I said because of time constraints, but I expect to be

 5    plugged in and to learn what the facts are so that I can satisfy

 6    my own interests which are independent of your personnel action.

 7    And I said a little more that Mr. Leon can pass on to you.

 8            Mr. Leon, I'm going to extend to you the usual

 9    Judge Lynn offer that:  Anything you want to say about me behind

10    my back is fine.  So you can --

11            MR. LEON:  You don't have to worry there, Your Honor.

12            THE COURT:  -- you can put whatever coloration to it

13    and all adjectives as you feel appropriate without any concern on

14    my part.

15            All right.  Explain to me, Mr. Tonolli, because I think

16    this task will likely fall upon your shoulders:  What is this

17    conversation going to be that you are going to have with Defense

18    counsel other than the bottom line which they will, on behalf of

19    their clients, be very happy to hear?  What -- What else are you

20    saying to them?

21            MR. TONOLLI:  It's a fair question.  It's not one that

22    we discussed, and so I don't know that it falls on my shoulders

23    necessarily to draw the lines.  We certainly would, if the Court

24    has a view, would hear it, but I would actually look to Mr. Leon

25    and Ms. Miller as to what we would specifically convey.

```
 1              THE COURT:  Do you want to comment on that?

 2              MR. LEON:  Sure, Your Honor.  I think you're right.  We

 3    want to deliver the news, frankly, for all sorts of reasons.

 4    It's news the Defendants and the attorneys want to hear.  We want

 5    to make sure we're not wasting anyone's time.  People are

 6    probably preparing for a hearing right now for Monday, so we want

 7    to communicate as quickly as possible.  And with the Court's

 8    permission, we'll do that as soon as this hearing is over.

 9              In terms of what else we say, it's a very fair

10    question.  Candidly, we're -- we're -- we have to balance a lot

11    of -- a lot of rights, including, frankly, Mr. Lopez's, what we

12    can and cannot say as it's fairly limited right now because we're

13    still figuring that out.  So -- So my recommendation, but, again,

14    we'll take the Court's direction, of course, is that we -- we

15    keep it pretty short and basic; that we've asked for leave of the

16    Court to dismiss with prejudice.  And I -- My initial

17    recommendation would be not to provide much -- many facts.

18    Again, we're not trying to hide anything.  We're, obviously --

19    That's why we're here.  We're going to continue to be as candid

20    with the Court and answer all the Court's questions.

21              But just thinking about it, there are other interests

22    and confidentiality and other issues in play, and I think as I

23    sit here on Friday, almost Friday evening, I don't know if I

24    would recommend to the Court that we say much more than that

25    right now.
```

1          THE COURT:  Okay.  I'm not -- I'm not involving myself

2     in this.

3          MR. LEON:  Okay.

4          THE COURT:  I don't know -- I know what I've heard

5     today.

6          MR. LEON:  Sure.

7          THE COURT:  I -- I'm not going to weigh in on what the

8     language should be, but Dallas lawyers gossip.  There's going to

9     be a lot of speculation.  Law360 picks up all kinds of things.

10          MR. LEON:  Sure.

11          THE COURT:  There will be guesses and speculation.

12     And, you know, someone is going to contact my office for comment

13     of which, of course, they will not get any comment from my

14     office, but there will be a lot of activity, and I want to make

15     sure.  I'm not pressing you all to tell me today, but I expect

16     you, Mr. Leon, and you, Ms. Miller, to over the next week or so

17     -- And I recognize the due process considerations for Mr. Lopez

18     that Mr. Leon is alluding to, but I am requiring that I be kept

19     in the loop about what is revealed about this.  I mean if -- if

20     Mister -- and I don't expect you to respond to this either,

21     Ms. Miller or Mr. Leon.

22          If Mr. Lopez is fired from the Department, that may be

23     the end of it as far as you all are concerned.  That's not the

24     end of it as far as I am concerned.  So there will have to be

25     some protocol for me to be kept in the loop in what is an

1    appropriate way.  I'm not sitting there in all of your meetings.

2              MR. LEON:  Sure.

3              THE COURT:  I don't mean to be suggesting that, but

4    what may be satisfactory for you may not be satisfactory for me,

5    but I don't know all the facts.  He hasn't -- I have no

6    discussion with him.  I'm not a fact finder, but I am very

7    concerned about what I see as very serious ethical issues and

8    perhaps more.  I don't make --

9              MR. LEON:  Sure.

10             THE COURT:  -- prosecutorial decisions and will not be.

11   And the Court would not think it necessary for the Court to make

12   a criminal referral, even if I thought that was appropriate,

13   because the persons who would be involved in that are on the

14   phone.  So -- But I expect that I will be involved in knowing

15   what the facts are with respect to at least ethical issues and

16   the Court's determination of whether Mr. Lopez can practice law

17   in our court and potentially in any court.

18             MR. LEON:  Sure, Your Honor.  Understood, Your Honor,

19   and agree.  Maybe I can just offer two quick things for you.

20             First of all, of course, we will give the Court any and

21   all updates we have factually.  I should just note the way the

22   Department works is we, meaning my office, my team, the people on

23   this call, the Fraud Section will not be the fact finders.  As

24   Ms. Miller referenced, this has been referred internally.  So we

25   are -- we're going to get our factual -- There will be a factual

1    record but it won't be from our team.  So it will be a one off,

2    but we will still provide the Court with any and all factual

3    updates we have.  That's just -- I wanted you to know internally

4    what the process is.

5         The other thing I would just say is:  We, myself and my

6    team, are taking all appropriate actions.  Mr. Lopez is not

7    working on and will not work on any cases anytime soon, if ever

8    again, and will not be both appearing before your court or any --

9    or any judge in your -- in the Northern District anytime soon, if

10   ever.  We are evaluating all the cases that he was previously

11   working on.  So you can imagine the types of immediate and

12   remedial action we're taking internally separate and apart from

13   ethical and fact finding that the Court is very, very

14   appropriately flagging as well.

15        THE COURT:  All right.  And, Mr. Tonolli, Mr. Howell is

16   also an attorney who appears regularly in our courts and,

17   consequently, I want the same kind of information about him that

18   you have.  I don't expect you necessarily to run this all to

19   ground unless there's some decision to potentially prosecute

20   Mr. Howell, but I have the same ethical concerns about him as I

21   do about Mr. Lopez.  So somehow we're going to have to figure out

22   how this information that you have -- I don't know what of the

23   material that you have described is in the box of materials that

24   you delivered today.  I suspect none of it.  So somehow the end

25   of this investigation about what the facts are has to come to my

```
 1   attention because, again, Mr. Howell, even more so than

 2   Mr. Lopez, would otherwise be appearing in our courts and,

 3   undoubtedly, is a member of the State Bar of Texas, as am I,

 4   which places ethical obligations on me.

 5           So, again, I don't expect everybody to come up with the

 6   perfect solution today.  I'm just putting everyone on notice that

 7   I regard my role in this as to a degree independent of everyone

 8   else's, and I will attempt to vindicate that independent

 9   interest.  So I'm going to need information in order to do that.

10           MR. TONOLLI:  Understood.

11           THE COURT:  All right.  Does anyone from the U.S.

12   Attorney's Office have anything you want to say?

13           MS. SIMONTON:  No, Your Honor.

14           THE COURT:  Okay.  All right.  Anything we haven't

15   covered today?

16           MR. TONOLLI:  Your Honor, if I may ask just on

17   logistics:  We plan to -- We will reach out to Defense counsel

18   and whatever their position is, we will file our motion this

19   afternoon.

20           I take it that we can represent to them and their

21   witnesses that the hearing is no longer on for Monday, just for

22   their planning and preparation purposes?

23           THE COURT:  Yes.  But I don't -- Yes, you certainly

24   can.  I don't think you need to say to them, "but the matter is

25   not over as far as Judge Lynn is concerned."  I don't think
```

1    that's your job to communicate that.  The case will be dismissed

2    with prejudice.  The Court grants you leave to do that.  I'm not

3    holding that up in any way because of the other concerns that I

4    have expressed.  I don't see the point of having a hearing on --

5    on Monday, though, because I'm expecting that I'll hear a lot of

6    indications of the Fifth Amendment, and I don't know the point of

7    that on Monday.  So I'm not planning to have that hearing.  So

8    you can advise them that the hearing is canceled.

9             MR. TONOLLI:  Thank you, Your Honor.

10            THE COURT:  And the suppression hearing is also

11   canceled.

12            MR. TONOLLI:  We'll convey that both to Defense

13   counsel, the witnesses and the prosecution team.

14            THE COURT:  You know -- You know there's a suppression

15   hearing.

16            MR. TONOLLI:  Yes.

17            THE COURT:  Okay.  All right.

18            Kate, can you think of anything else that I haven't

19   covered?

20            MS. MARCOM:  I can't think of anything, no.

21            THE COURT:  Okay.  All right.  Any -- Any other

22   comments from anyone?

23            (Silence)

24            THE COURT:  All right.  I appreciate you all acting

25   promptly.  And, Mr. Tonolli, I will go to sleep tonight saying a

1    prayer you never have to do this ever again in your entire life.

2              MR. TONOLLI:  From your lips to God's ears, yes, ma'am.

3              THE COURT:  Yes.  Okay.  Thank you.  All right.

4              MR. LEON:  Thank you, Your Honor.

5              THE COURT:  We're adjourned.  Thank you.

6              MS. MILLER:  Thank you.

7              MR. TONOLLI:  Thank you, Your Honor.

8              (Hearing adjourned at 4:15 PM.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

CERTIFICATE OF OFFICIAL REPORTER


        I, Deborah A. Kriegshauser, Federal Official Realtime

Court Reporter, in and for the United States District Court for

the Northern District of Texas, do hereby certify that pursuant

to Section 753, Title 28, United States Code, that the foregoing

is a true and correct transcript of the stenographically-reported

proceedings held in the above-entitled matter and that the

transcript page format is in conformance with the regulations of

the Judicial Conference of the United States.

        Dated this 18th day of May, 2023.


                        /s/ Deborah A. Kriegshauser
                        _____
                        DEBORAH A. KRIEGSHAUSER, FAPR, RMR, CRR
                        FEDERAL OFFICIAL COURT REPORTER